113 F.3d 1121
 44 ERC 2107, 27 Envtl. L. Rep. 20,971,
97 Cal. Daily Op. Serv. 3815,
97 Daily Journal D.A.R. 6478
 NATURAL RESOURCES DEFENSE COUNCIL, a New York non-profit
corporation; National Audubon Society, a New York
non-profit corporation; Elisabeth
Brown, Dr., an individual,
Plaintiffs-Appellants,
v.
UNITED STATES DEPARTMENT OF THE INTERIOR; Secretary of the
Interior; Director of the United States Fish and Wildlife
Service; Regional Director of the United States Fish and
Wildlife Service, Region 1; Field Supervisor, United States
Fish and Wildlife Service, Carlsbad Field Office; United
States Department of Transportation; Secretary of the
United States Department of Transportation; Federal Highway
Administration; Administrator of the Federal Highway
Administration; Regional Administrator, Region IX, of the
Federal Highway Administration; San Joaquin Hills
Transportation Corridor Agency, Defendants-Appellees.
 No. 95-56075.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 10, 1996.
Decided May 21, 1997.
 
 Joel R. Reynolds and Michael D. Fitts, Natural Resources Defense Council, Inc., Los Angeles, California; Kathleen Rogers, National Audubon Society, Washington, D.C.; Craig S. Bloomgarden, Macklin Tatro, Los Angeles, California, for plaintiffs-appellants.
 Anne S. Almy, Ellen J. Durkee, James C. Kilbourne, Christiana P. Perry, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C.; Kurt Zimmerman, Assistant United States Attorney, Los Angeles, California; Robert D. Thornton, Nossaman, Guthner, Knox & Elliott, Irvine, California, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California Linda H. McLaughlin, District Judge, Presiding, D.C. No. CV-93-999-LHM.
 Before PREGERSON, D.W. NELSON, and O'SCANNLAIN, Circuit Judges.
 OPINION
 PREGERSON, Circuit Judge:
 
 
 1
 This case presents the question whether the defendants violated the Endangered Species Act by failing to designate critical habitat for the coastal California gnatcatcher. Upon cross-motions for summary judgment, the district court denied the plaintiffs' motion and granted summary judgment for the defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.
 
 FACTS
 
 2
 The coastal California gnatcatcher is a songbird unique to coastal southern California and northern Baja California. The gnatcatcher's survival depends upon certain subassociations of coastal sage scrub, a type of habitat that has been severely depleted by agricultural and urban development. Approximately 2500 pairs of gnatcatchers survive in southern California today.
 
 
 3
 On March 30, 1993, the U.S. Fish and Wildlife Service (the "Service") listed the gnatcatcher under the Endangered Species Act (the "Act") as a "threatened species." 58 Fed.Reg. 16742 (1993). Under section 4 of the Act, the listing of a threatened species must be accompanied by the concurrent designation of critical habitat for that species "to the maximum extent prudent and determinable." 16 U.S.C. § 1533(a)(3). The designation of critical habitat in turn triggers the protections of section 7 of the Act. Section 7 requires that federal agencies consult with the Secretary of the Interior (the "Secretary") to ensure that actions authorized, funded, or carried out by federal agencies do not harm critical habitat. Id. § 1536(a)(2).
 
 
 4
 At the time of the gnatcatcher's listing as a threatened species, the Service found that coastal sage scrub habitat loss posed "a significant threat to the continued existence of the coastal California gnatcatcher." 58 Fed.Reg. at 16748. Nevertheless, the Service concluded that critical habitat designation would not be "prudent" within the meaning of section 4 for two reasons. Id. at 16756. First, the Service claimed that the public identification of critical habitat would increase the risk that landowners might deliberately destroy gnatcatcher habitat. Second, the Service claimed that critical habitat designation "would not appreciably benefit" the gnatcatcher because most gnatcatcher habitat is found on private lands to which section 7's consultation requirement does not apply.
 
 
 5
 The Natural Resources Defense Council, the National Audubon Society, and biologist Elisabeth Brown (collectively, the "plaintiffs") challenged the Service's failure to designate critical habitat in this suit against the Service, various Service officials, the Secretary, and the U.S. Department of the Interior (collectively, the "defendants"). Each side moved for summary judgment. The district court denied the plaintiffs' motion and granted summary judgment to the defendants.
 
 
 6
 On this appeal, the plaintiffs contend that the district court erred in granting summary judgment to the defendants rather than the plaintiffs. In response, the defendants contend that the case is moot and must therefore be dismissed for lack of jurisdiction; or, in the alternative, that the district court's grant of summary judgment for the defendants should be affirmed.
 
 STANDARD OF REVIEW
 
 7
 We review de novo the district court's grant of summary judgment upholding an agency decision. Southwest Ctr. for Biological Diversity v. U.S. Forest Serv., 100 F.3d 1443, 1447 (9th Cir.1996). The appropriate inquiry is whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Resources Ltd., Inc. v. Robertson, 35 F.3d 1300, 1304 (9th Cir.1993) (quoting § 706 of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)). In making this inquiry, we ask whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choice made." Id. (quoting Pyramid Lake Paiute Tribe v. U.S. Dep't of Navy, 898 F.2d 1410, 1414 (9th Cir.1990)).
 
 
 8
 We accord a high degree of deference to an agency's interpretation of the statutory provisions and regulations it is charged with administering. Rainsong Co. v. Federal Energy Regulatory Comm'n, 106 F.3d 269, 271-72 (9th Cir.1997). Nonetheless, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).
 
 DISCUSSION
 I. Justiciability
 
 9
 The justiciability of the Service's failure to designate critical habitat is a threshold jurisdictional issue that we must address even though the issue was not raised at trial. See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction.") (internal quotation marks omitted).
 
 
 10
 The complaint filed by the plaintiffs in the district court challenged not only the Service's failure to designate critical gnatcatcher habitat in general, but also the Service's failure to protect the particular gnatcatcher sites disturbed by construction of the San Joaquin Hills Transportation Corridor Tollroad. The Tollroad-related claims were later mooted by the substantial completion of the Tollroad. On May 31, 1995, the parties jointly requested that the district court dismiss all Tollroad-related claims.
 
 
 11
 The defendants now contend that the mooting of the Tollroad-specific claims deprives this court of jurisdiction because the remaining programmatic challenge to the failure to designate habitat is not ripe for review. We disagree.
 
 
 12
 The test of ripeness is whether the issue presented is "sufficiently concrete for judicial resolution." Western Oil & Gas Ass'n v. Sonoma County, 905 F.2d 1287, 1290 (9th Cir.1990). In the context of environmental protection claims, we have previously held that "plaintiffs need not wait to challenge a specific project when their grievance is with an overall plan." Seattle Audubon Soc'y v. Espy, 998 F.2d 699, 703 (9th Cir.1993).
 
 
 13
 In the present case, the plaintiffs challenge the Service's final decision to exclude gnatcatcher sites from critical habitat protection. This decision eliminates the section 7 consultation requirement from the "overall plan" of gnatcatcher habitat conservation. Regardless of the status of site-specific developments, this general programmatic harm is "sufficiently concrete for judicial resolution." Western Oil, 905 F.2d at 1290. Therefore, the Service's decision not to designate critical habitat for gnatcatchers is ripe for immediate review.
 
 
 14
 II. The Service's Failure to Designate Critical Habitat
 
 
 15
 Section 4 of the Act requires that the gnatcatcher's listing as a threatened species be accompanied by concurrent designation of critical habitat "to the maximum extent prudent and determinable":
 
 
 16
 The Secretary, by regulation promulgated in accordance with subsection (b) of this section and to the maximum extent prudent and determinable--
 
 
 17
 (A) shall, concurrently with making a determination under paragraph (1) that a species is an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat; and(B) may, from time-to-time thereafter as appropriate, revise such designation.
 
 
 18
 16 U.S.C. § 1533(a)(3) (emphasis added).
 
 
 19
 The Act itself does not define the term "prudent." The Service has defined what would not be prudent, however, in the regulations promulgated under the Act. According to the regulations, critical habitat designation is not prudent "when one or both of the following situations exist":
 
 
 20
 (i) The species is threatened by taking or other human activity, and identification of critical habitat can be expected to increase the degree of such threat to the species, or
 
 
 21
 (ii) Such designation of critical habitat would not be beneficial to the species.
 
 
 22
 50 C.F.R. § 424.12(a)(1)(i)-(ii) (1996) (emphasis added).
 
 
 23
 When the Service published the gnatcatcher's final listing as a threatened species, the Service stated that critical habitat designation would not be prudent under either prong of the regulatory definition. 58 Fed.Reg. at 16756. The final listing fails to show, however, that the Service adequately "considered the relevant factors and articulated a rational connection between the facts found and the choice made" as required under Resources Ltd., 35 F.3d at 1304 (quoting Pyramid Lake Paiute Tribe, 898 F.2d at 1414).
 
 A. Increased Threat to the Species
 
 24
 The Service's first reason for declining to designate critical habitat was that designation would increase the degree of threat to the gnatcatcher. 58 Fed.Reg. at 16756. The final listing referred to eleven cases in which landowners or developers had destroyed gnatcatcher sites; in two of these cases, habitat was destroyed after the Service notified local authorities that gnatcatchers were present at a proposed development site. Id. at 16753, 16756. On the basis of this history, the Service concluded that because the publication of critical habitat descriptions and maps would enable more landowners to identify gnatcatcher sites, designating critical habitat "would likely make the species more vulnerable to [prohibited takings] activities." Id. at 16756.
 
 
 25
 This "increased threat" rationale fails to balance the pros and cons of designation as Congress expressly required under section 4 of the Act. Section 4(b)(2) states that the Secretary may only exclude portions of habitat from critical habitat designation "if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat." 16 U.S.C. § 1533(b)(2) (emphasis added). In addition, the Service itself has said that it will forgo habitat designation as a matter of prudence only "[i]n those cases in which the possible adverse consequences would outweigh the benefits of designation." 49 Fed.Reg. 38900, 38903 (1984) (emphasis added).
 
 
 26
 In this case, the Service never weighed the benefits of designation against the risks of designation. The final listing decision cited only eleven cases of habitat destruction, out of 400,000 acres of gnatcatcher habitat. The listing did not explain how such evidence shows that designation would cause more landowners to destroy, rather than protect, gnatcatcher sites. The absence of such an explanation is particularly troubling given that the record shows these areas had already been surveyed extensively in other gnatcatcher or coastal sage scrub studies published prior to the date of final listing.
 
 
 27
 By failing to balance the relative threat of coastal sage scrub takings both with and without critical habitat designation, the Service failed to consider all relevant factors as required under Resources Ltd., 35 F.3d at 1304. The Service's reliance on the "increased threat" exception to section 4 designation was therefore improper.
 
 B. No Benefit to the Species
 
 28
 The Service's second reason for declining to designate habitat was that designation "would not appreciably benefit the species." 58 Fed.Reg. at 16756. According to the Service's final listing decision, most populations of gnatcatchers are found on private lands to which section 7's consultation requirement would not apply. Id. The final listing decision suggests that designation may only be deemed "beneficial to the species" and therefore "prudent" if it would result in the application of section 7 to "the majority of landuse activities occurring within critical habitat." Id. (emphasis added).
 
 
 29
 By rewriting its "beneficial to the species" test for prudence into a "beneficial to most of the species" requirement, the Service expands the narrow statutory exception for imprudent designations into a broad exemption for imperfect designations. This expansive construction of the "no benefit" prong to the imprudence exception is inconsistent with clear congressional intent.
 
 
 30
 The fact that Congress intended the imprudence exception to be a narrow one is clear from the legislative history, which reads in part:
 
 
 31
 The committee intends that in most situations the Secretary will ... designate critical habitat at the same time that a species is listed as either endangered or threatened. It is only in rare circumstances where the specification of critical habitat concurrently with the listing would not be beneficial to the species.
 
 
 32
 H.R.Rep. No. 95-1625 at 17 (1978), reprinted in 1978 U.S.C.C.A.N. 9453, 9467 (emphasis added). See also Enos v. Marsh, 769 F.2d 1363, 1371 (9th Cir.1985) (holding that the Secretary "may only fail to designate a critical habitat under rare circumstances") (emphasis added); Northern Spotted Owl v. Lujan, 758 F.Supp. 621, 626 (W.D.Wash.1991) ("This legislative history leaves little room for doubt regarding the intent of Congress: The designation of critical habitat is to coincide with the final listing decision absent extraordinary circumstances.") (emphasis added).
 
 
 33
 By expanding the imprudence exception to encompass all cases in which designation would fail to control "the majority of land-use activities occurring within critical habitat," 58 Fed.Reg. at 16756 (emphasis added), the Service contravenes the clear congressional intent that the imprudence exception be a rare exception. Since "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress," Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781, we reject the Service's suggestion that designation is only necessary where it would protect the majority of species habitat.
 
 
 34
 In the present case, the Service found that of approximately 400,000 acres of gnatcatcher habitat, over 80,000 acres were publicly-owned and therefore subject to section 7 requirements. 58 Fed.Reg. at 16743. Other privately-owned lands would also be subject to section 7 requirements if their use involved any form of federal agency authorization or action. See 16 U.S.C. § 1536(a)(2).
 
 
 35
 The Service does not explain why a designation that would benefit such a large portion of critical habitat is not "beneficial to the species" within the plain meaning of the regulations and "prudent" within the clear meaning of the statute. Accordingly, we conclude that the Service's "no benefit" argument fails to "articulate[ ] a rational connection between the facts found and the choice made" as required under Resources Ltd., 35 F.3d at 1304. The Service's reliance on the "no benefit" exception to section 4 designation was therefore improper.
 
 C. Less Benefit to the Species
 
 36
 In addition to the above two rationales which were stated in the final listing, the defendants now offer a third argument in defense of the Service's failure to designate critical habitat. The defendants contend that a "far superior" means of protecting gnatcatcher habitat is provided by the state-run "comprehensive habitat management program" created under California's Natural Communities Conservation Program ("NCCP"). The Service has endorsed the NCCP as a "special rule" for gnatcatcher protection under section 4(d) of the Act, 16 U.S.C. § 1533(d).
 
 
 37
 Regulations under the Act provide that "the reasons for not designating critical habitat will be stated in the publication of proposed and final rules listing a species." 50 C.F.R. § 424.12(a). The NCCP alternative was not identified in the Service's proposed or final listings as a reason not to designate critical habitat. Therefore, this argument is not properly before us for consideration. See Olin Corp. v. FTC, 986 F.2d 1295, 1305 n. 9 (9th Cir.1993) (declining to review potential justification for FTC ruling because "the Commission did not explicitly consider this argument in its opinion").
 
 
 38
 Even if we were to consider the NCCP alternative, however, the existence of such an alternative would not justify the Service's failure to designate critical habitat. The Act provides that designation of critical habitat is necessary except when designation would not be "prudent" or "determinable." 16 U.S.C. § 1533(a)(3). The Service's regulations define "not prudent" as "increas[ing] the degree of [takings] threat to the species" or "not ... beneficial to the species." 50 C.F.R. § 424.12(a)(1)(i)-(ii) (emphasis added). Neither the Act nor the implementing regulations sanctions nondesignation of habitat when designation would be merely less beneficial to the species than another type of protection.[1]
 
 
 39
 In any event, the NCCP alternative cannot be viewed as a functional substitute for critical habitat designation. Critical habitat designation triggers mandatory consultation requirements for federal agency actions involving critical habitat. The NCCP alternative, in contrast, is a purely voluntary program that applies only to non-federal land-use activities. The Service itself recognized at the time of its final listing decision that "no substantive protection of the coastal California gnatcatcher is currently provided by city/county enrollments [in the NCCP]." 58 Fed.Reg. at 16754. Accordingly, we reject the defendants' post hoc invocation of the NCCP to justify the Service's failure to designate critical habitat.
 
 CONCLUSION
 
 40
 The Service failed to discharge its statutory obligation to designate critical habitat when it listed the gnatcatcher as a threatened species, or to articulate a rational basis for invoking the rare imprudence exception. We therefore reverse the district court's finding that the Service's actions were not "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."
 
 
 41
 Accordingly, we reverse the district court's grant of summary judgment to the defendants; reverse the denial of summary judgment to the plaintiffs; and remand to the district court with directions to remand to the Service so that the Service may issue a new decision consistent with this opinion.
 
 
 42
 REVERSED and REMANDED.
 
 O'SCANNLAIN, Circuit Judge, dissenting:
 
 43
 I respectfully dissent because I am not persuaded that the U.S. Fish and Wildlife Service abused its discretion when it decided not to designate critical habitat for the Coastal California gnatcatcher.
 
 
 44
 * The standard of review in this case is quite deferential. We are not to substitute our independent judgment for that of the Service; instead, we review its decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Pyramid Lake Paiute Tribe v. United States Dep't of the Navy, 898 F.2d 1410, 1414 (9th Cir.1990). In order to satisfy our inquiry, the agency need only "consider[ ] the relevant factors and articulate[ ] a rational connection between the facts found and the choice made.' " Id. (quoting Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc., 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437 (1983)).
 
 
 45
 In deciding that, contrary to the Service's considered conclusion, designation of critical habitat for the gnatcatcher would be prudent (and is therefore mandated), the majority concludes that neither of the two "imprudence" exceptions apply. If the Service "considered the relevant factors and articulated a rational connection between the facts found and the choice made" for either exception, however, then we are obliged to affirm.II
 
 
 46
 According to the Service's regulations, the first situation in which designation of habitat would be imprudent is when "[t]he species is threatened by taking or other human activity, and identification of critical habitat can be expected to increase the degree of such threat to the species." 50 C.F.R. § 424.12(a)(1)(i) (1996).
 
 
 47
 When it decided not to designate critical habitat for the gnatcatcher, the Service found that on at least 11 occasions, private landowners had destroyed gnatcatcher habitat, raising the inference that, at least in some cases, the landowners were acting intentionally to avoid environmental regulation of their property. The majority concludes that this "increased threat" rationale is insufficient to support application of the exception because it does not balance "the relative threat of coastal sage scrub takings both with and without critical habitat designation." I disagree.
 
 
 48
 The majority states that a determination of whether a designation would be prudent must include weighing the benefits of designation against its risks. Our cases do not support this conclusion, however; they generally require only that the agency follow a rational decision-making process. See Bennett v. Plenert, 63 F.3d 915, 921 (9th Cir.1995), overruled on other grounds, Bennett v. Spear, --- U.S. ----, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). The fact that the word "outweigh" is used in a statutory provision not addressing the prudence exception and in a statement in the federal register does not mandate, on pain of reversal, that the Service conduct an explicit balancing test.
 
 
 49
 That point aside, however, I believe that a fair reading of the Service's decision reveals that it did in fact conduct precisely the balancing test called for by the majority when it concluded that designation may cause the intentional destruction of habitat by private landowners, but would produce little benefit since most of the habitat is not on publicly-owned land. It is worth quoting the Service at length:
 
 
 50
 [S]ome landowners or project developers have brushed or graded sites occupied by gnatcatchers prior to regulatory agency review or the issuance of a grading permit. In some instances, gnatcatcher habitat was destroyed shortly after the Service notified a local regulatory agency that a draft environmental review document for a proposed housing development failed to disclose the presence of gnatcatchers on-site. On the basis of these kinds of activities, the Service finds that publication of critical habitat descriptions and maps would likely make the species more vulnerable to [prohibited] activities....
 
 
 51
 Most populations of the coastal California gnatcatcher in the United States are found on private lands where Federal involvement in land-use activities does not generally occur. Additional protection resulting from critical habitat designation is achieved through the section 7 consultation process. Since section 7 would not apply to the majority of land-use activities occurring within critical habitat, its designation would not appreciably benefit the species.
 
 
 52
 58 Fed.Reg. 16742, 16756 (1993) (emphasis added). In my view, applying the majority's balancing requirement, the Service indeed weighed the benefits and risks of designation and came to a rational, defensible conclusion that designation was not prudent. This alone would be sufficient to affirm the district court.
 
 III
 
 53
 The second situation in which designation would not be prudent exists when "such designation of critical habitat would not be beneficial to the species." 50 C.F.R. § 424.12(a)(1)(ii) (1996). The Service noted that since approximately 80% of the gnatcatcher habitat is owned by private landowners, designation would not "appreciably benefit the species." 58 Fed.Reg. at 16756.
 
 
 54
 In my view, the majority takes too narrow a view of the phrase "beneficial to the species." The question should not be whether any member of the species would be better off by a slender margin, but whether the species as a whole would benefit from the designation. Even though the gnatcatchers in most of the habitat would not benefit, reasons the majority, some of the gnatcatchers would benefit, and hence designation would be beneficial for the species. The problem with this argument is that it overlooks the Service's expert opinion, to which we are required to defer, that designation may harm the gnatcatchers when landowners intentionally destroy the habitat. Even though individual pockets of gnatcatchers may benefit, the species as a whole may not.
 
 
 55
 I respectfully dissent.
 
 
 
 [1]
 In contrast, the Act expressly takes into account for purposes of species listings any conservation efforts "being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species." 16 U.S.C. § 1533(b)(1)(A)