**NORTHERN SPOTTED OWL (Strix Occidentalis Caurina), et al., Plaintiffs,**

v.

**Manual LUJAN, et al., Defendants.**

**No. C88–573Z.**

United States District Court, W.D. Washington, N.D.

Feb. 26, 1991.

Victor M. Sher, Todd D. True, Sierra Club Legal Defense Fund, Seattle, Wash., Michael R. Sherwood, Sierra Club Legal Defense Fund, San Francisco, Cal., Mark C. Rutzick, Preston, Thorgrimson, Shidler, Gates & Ellis, Portland, Or., for Nat. Audubon Society and for Northwest Forest Resource Council, Amicus Curiae.

Jean E. Williams Mellor, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for Director of Fish & Wildlife Service, Regional Director, Fish & Wildlife Service, Secretary of the Interior, U.S. Dept. of the Interior, U.S. Fish & Wildlife.

Charles W. Brooks, U.S. Dept. of Justice, Washington, D.C., for Frank Dunkle and Donald Hodel.

James C. Kilbourne, U.S. Dept. of Justice, Washington, D.C., for Manual Lujan, in his official capacity as Secretary of the Interior and John F. Turner, in his official capacity as Director of the U.S. Fish and Wildlife Service.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO COMPEL DESIGNATION OF CRITICAL HABITAT

ZILLY, District Judge.

THIS MATTER comes before the Court upon plaintiffs' motion for summary judgment and their motion to compel the federal defendants to designate critical habitat for the northern spotted owl. The Court took this matter under advisement following oral argument on January 25, 1991. Having reviewed all the materials sub-

mitted, including those submitted by the Northwest Forest Resource Council as *amicus curiae,* and being fully advised, the Court hereby GRANTS plaintiffs' motion for summary judgment, docket no. 113, and GRANTS their motion, docket no. 87, to compel the federal defendants to designate critical habitat for the northern spotted owl.

## I.

### Statement of Facts

In May 1988, twenty-two environmental organizations filed suit against the Secretary of the Interior, the U.S. Fish and Wildlife Service ("Service"), and other federal defendants, alleging the Service's decision not to list the northern spotted owl under the Endangered Species Act of 1973, as amended, 16 U.S.C. § 1531 *et seq.* ("ESA"), was arbitrary and capricious, and contrary to law. After extensive briefing and argument by counsel, this Court ruled in favor of plaintiffs and remanded this matter to the Service for further proceedings. *Northern Spotted Owl v. Hodel,* 716 F.Supp. 479 (W.D.Wash.1988).

On June 23, 1989, the Service proposed to list the northern spotted owl as a "threatened" species under the Endangered Species Act.[1] *See* 54 Fed.Reg. 26,666 (1989). On June 26, 1990, the Service published its final rule confirming that listing decision. *See* 55 Fed.Reg. 26,114 (1990). In both the proposed and final listing rules, the Service expressly deferred designation of critical habitat for the spotted owl on grounds that it was not "determinable."

Plaintiffs move this Court to order the federal defendants to designate "critical habitat" for the northern spotted owl. As defined under the ESA, "critical habitat" refers to geographic areas which are essential to the conservation of the spotted owl and which may require special management considerations or protection. 16 U.S.C. § 1532(5)(A)(i). Thus, even though more extensive habitat may be essential to maintain the species over the long term, critical habitat only includes the minimum amount of habitat needed to avoid short-term jeopardy or habitat in need of immediate intervention. Habitat not currently occupied by the spotted owl may be designated as critical only upon a determination by the Secretary of the Interior that such areas are essential to ensure the conservation of the species. 16 U.S.C. § 1532(5)(A)(ii). The Secretary must consult with other federal agencies to ensure that governmental actions do not "result in the destruction or adverse modification" of land designated as critical habitat. 16 U.S.C. § 1536(a)(2).

The initial determination of what areas constitute critical habitat is to be made on the basis of "the best scientific data available." 16 U.S.C. § 1533(b)(2). This requires identifying geographic areas containing the physical and biological features considered to be essential to the conservation of the species. *See* 50 C.F.R. § 424.12(b) (listing criteria for designating critical habitat). In addition, Congress directed the Secretary of the Interior to consider the probable economic or other impacts on human activities resulting from the critical habitat designation. The Secretary is expressly authorized to exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the conservation benefits, unless to do so would result in the extinction of the species. 16 U.S.C. § 1533(b)(2).

Plaintiffs challenge the Service's decision, on behalf of the Secretary, to defer designation of critical habitat for the northern spotted owl. The ESA requires the Secretary, "to the maximum extent prudent and determinable," to designate critical habitat *concurrently* with his decision to list a species as endangered or threatened. 16 U.S.C. § 1533(a)(3). When critical habitat is not determinable at the time of the final listing rule, the Secretary is authorized up to twelve additional months to complete the designation. 16 U.S.C.

---

1. A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20). A threatened species is entitled to the full panoply of protections under federal environmental law. 16 U.S.C. § 1533(d).

§ 1533(b)(6)(C). The governing administrative regulations specify that the Secretary must state his reasons for not designating critical habitat in the proposed and final listing rules. 50 C.F.R. § 424.12(a).

The Secretary, through the Service, claims that critical habitat for the spotted owl was not "determinable" when, in June 1989, the Service proposed to list the owl as threatened or when it issued its final rule one year later. The federal defendants contend that, under these circumstances, they are entitled to a twelve-month extension of time pursuant to 16 U.S.C. § 1533(b)(6)(C). Plaintiffs charge that the Secretary has violated the Endangered Species Act and the Administrative Procedure Act by failing to designate critical habitat concurrently with the listing of the northern spotted owl.

## II.

### Standard of Review

■ The actions of the Secretary of the Interior and his delegates are reviewed in accordance with the Administrative Procedure Act, 5 U.S.C. § 706. *Pyramid Lake Paiute Tribe of Indians v. United States Dept. of Navy,* 898 F.2d 1410, 1414 (9th Cir.1990); *Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976, 981 (9th Cir.1985). Administrative decisions must be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Conner v. Burford,* 848 F.2d 1441, 1453 (9th Cir.1988), *cert. denied sub nom. Sun Exploration & Production Co. v. Lujan,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). The scope of judicial review under this standard is narrow, and the Court is not permitted to substitute its own judgment for that of the administrative decision-maker. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*

463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443, 458 (1983). The relevant inquiry is whether the agency " 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.' " *Pyramid Lake Paiute Tribe,* 898 F.2d at 1414 (quoting *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 2256, 76 L.Ed.2d 437, 452 (1983)). This Court must inquire whether the Secretary and his delegates have properly discharged their duties under the Endangered Species Act and appropriate administrative regulations.

## III.

### Analysis

Section 4(a)(3) of the Endangered Species Act requires the Secretary of the Interior, "to the maximum extent prudent and determinable," to designate critical habitat *concurrently* with the decision to list a species as endangered or threatened under the Act. 16 U.S.C. § 1533(a)(3).[2] This statutory directive is consistent with Congress' stated objective that the ESA "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved...." 16 U.S.C. § 1531(b); *see also* 16 U.S.C. § 1533(a)(1)(A); *see generally* Coggins & Russell, *Beyond Shooting Snail Darters in Port Barrels: Endangered Species and Land Use in America,* 70 Geo. L.J. 1433 (1982) (reviewing legislative history of Endangered Species Act).

The language employed in Section 4(a)(3) and its place in the overall statutory scheme evidence a clear design by Congress that designation of critical habitat coincide with the species listing determination. The linkage of these issues was not the product of chance; rather, it reflects

---

**2.** Section 4(a)(3), codified at 16 U.S.C. § 1533(a)(3), provides that:

  (3) The Secretary [of the Interior], by regulation promulgated in accordance with subsection (b) of this section *and to the maximum extent prudent and determinable*—

  (A) shall, *concurrently* with making a determination under paragraph (1) that a species is

an endangered species or a threatened species, designate any habitat of such species which is then considered to be critical habitat; and

  (B) may, from time-to-time thereafter as appropriate, revise such designation.

16 U.S.C. § 1533(a)(3) (emphasis supplied).

the studied and deliberate judgment of Congress that destruction of habitat was the most significant cause of species endangerment. *See* H.R.Rep. No. 1625, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S. Code Cong. & Admin.News 9453, 9455 ("The loss of habitat for many species is universally cited as the major cause for the extinction of species worldwide."); S.Rep. No. 307, 93d Cong., 1st Sess. 1–2, *reprinted in* 1973 U.S.Code Cong. & Admin.News 2989, 2990:

As originally enacted, the ESA admitted no exceptions to the requirement that the critical habitat designation occur concurrently with the listing determination. 16 U.S.C. § 1536 (requiring federal agencies to avoid "the destruction or modification of habitat ... which is determined by the Secretary ... to be critical") (current version at 16 U.S.C. § 1536(a)(2)); *see also* 16 U.S.C. § 1533(c)(1) (requiring Secretary to specify range of endangered or threatened species) (amended 1978).

In 1978, Congress clarified that the Secretary was required, "to the maximum extent prudent," to specify critical habitat "[a]t the time [the species] is proposed [for listing]." 16 U.S.C. § 1533(a)(1) (current version at 16 U.S.C. § 1533(a)(3)); *see also* 16 U.S.C. § 1533(c)(1) (requiring Secretary to specify critical habitat within range of endangered or threatened species). By its 1978 amendments, Congress expressly linked the timing of the critical habitat designation to the decision to list the species. A single exception to this duty was recognized when the habitat designation was not "prudent." The Secretary's discretion to decline to make a designation on this basis was intended to be circumspect:

The committee intends that in most situations the Secretary will ... designate critical habitat at the same time that a species is listed as either endangered or threatened. It is only in rare circum-

stances where the specification of critical habitat concurrently with the listing would not be beneficial to the species. H.R.Rep. No. 1625, 95th Cong., 2d Sess. 17, *reprinted in* 1978 U.S.Code Cong. & Admin.News 9453, 9467. Under current regulations, a critical habitat designation is not "prudent" only if it is not in the best interest of the species.[3]

In 1982, Congress expressed frustration at the slow pace of implementing the Endangered Species Act. Particular concern focused on the Secretary's critical habitat responsibilities as a source of delay:

At the present time, the Secretary is required to withdraw a proposal from further consideration if he fails to make a final determination with respect to the status of the species within two years after it has been proposed for listing or delisting. Since 1978, this requirement has caused the Secretary to withdraw numerous listing proposals solely because the Secretary has been unable, within the prescribed two year period, to complete the economic analysis of critical habitat designation. Other proposals have been withdrawn because the scientific information necessary to designate critical habitat has been unavailable.

S.Rep. No. 418, 97th Cong., 2d Sess. 11 (1982); *see also* H.R.Rep. No. 567, 97th Cong., 2d Sess., at 11–12, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2807, 2811–12; *see generally* Yagerman, *Protecting Critical Habitat Under the Federal Endangered Species Act*, 20 Envtl. L. 811, 834–38 (1990).

The solution adopted by Congress permits the Secretary to defer the habitat designation upon finding that critical habitat is not "determinable" at the time the Secretary proposes to list the species under the ESA or at the time of his final listing decision. 16 U.S.C. § 1533(b)(6)(C).[4] In no

---

**3.** The regulations of the Fish and Wildlife Service define only two situations when designation of critical habitat is not "prudent" within the meaning of 16 U.S.C. § 1533(a)(3):

(i) The species is threatened by taking or other human activity, and identification of

critical habitat can be expected to increase the degree of such threat to the species, or
(ii) Such designation of critical habitat would not be beneficial to the species.
50 C.F.R. § 424.12(a)(1).

**4.** Section 4(b)(6)(C), codified at 16 U.S.C. § 1533(b)(6)(C), provides in pertinent part:

event may the Secretary delay the designation of critical habitat for more than twelve months after publication of the final listing rule. In crafting this solution, Congress expressly reaffirmed its earlier judgment that the critical habitat designation is to occur *concurrently* with the listing decision, except in the limited circumstances when critical habitat is not "determinable" or when it is not "prudent" to do so. *See also* 16 U.S.C. § 1533(a)(3). The authoring committee of the 1982 amendments, the House Committee on Merchant Marine and Fisheries, expressly emphasized the narrow nature of this exception:

> By the inclusion of the word "determinable" the Committee recognizes that, because of the combination of biological studies and the economic analysis required under Section 4(b)(4) of the Act ... it may be difficult to determine the most appropriate critical habitat within the time frame contained in the legislation for the listing of species. The Committee feels strongly, however, that, where the biology relating to the status of the species is clear, it should not be denied the protection of the Act because of the inability of the Secretary to complete the work necessary to designate critical habitat.... *The Committee expects the agencies to make the strongest attempt possible to determine critical habitat within the time period designated for listing,* but stresses that the listing of species is not to be delayed in any instance past the time period allocated for such listing....

H.R.Rep. No. 567, 97th Cong., 2d Sess., at 19–20, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2807, 2819–20 (emphasis supplied). The conference report to the 1982 amendments further emphasizes that designation is to occur at *the earliest possible time,* not to exceed twelve months after publication of the final listing rule. *See* H.R. Conf. Rep. 835, 97th Cong., 2d Sess. 24, *reprinted in* 1982 U.S.Code Cong. & Admin.News 2860, 2865.

The conference report also states that the Secretary must "justify listing a species without designating critical habitat" to support it. *Id.* This requirement is reflected in the regulations developed by the Fish and Wildlife Service to carry out Congress' directives under the Endangered Species Act. Those regulations provide in part:

> (a) Critical habitat shall be specified to the maximum extent prudent and determinable at the time a species is proposed for listing. If designation of critical habitat is not prudent or if critical habitat is not determinable, *the reasons for not designating critical habitat will be stated in the publication of the proposed and final rules listing a species.*

50 C.F.R. § 424.12(a) (emphasis supplied).

This legislative history leaves little room for doubt regarding the intent of Congress: The designation of critical habitat is to coincide with the final listing decision absent extraordinary circumstances. Section 4(a)(3) necessarily impresses upon the Secretary of the Interior an affirmative duty to seek out or, at a minimum, to identify *prior* to the final listing decision the biological and economic data that will be necessary to making his designation of critical habitat. *See* 16 U.S.C. § 1533(b)(2) (Secretary required to make designation on "best scientific information available").

This Court rejects as incongruous the federal defendants' argument that Section 4(b)(6)(C) authorizes an automatic extension of time merely upon a finding that critical

---

(C) A final regulation designating critical habitat of an endangered species or a threatened species shall be published *concurrently* with the final regulation implementing the determination that such species is endangered or threatened, *unless the Secretary deems that—*

   .    .    .    .    .

(ii) *critical habitat of such species is not then determinable,* in which case the Secretary, with respect to the proposed regulation to designate such habitat, may extend the one-year period specified in subparagraph (A) by not more than one additional year, but not later than the close of such additional year the Secretary must publish a final regulation, based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat.

16 U.S.C. § 1533(b)(6)(C) (emphasis supplied).

habitat is not presently "determinable," even where no effort has been made to secure the information necessary to make the designation. To relieve the Secretary of any affirmative information gathering responsibilities would effectively nullify Congress' charge that the species listing and habitat designation occur concurrently, "to the maximum extent … determinable." 16 U.S.C. § 1533(a)(3).

■ Turning to the record presented, this Court is unable to find any support for the federal defendants' claim that critical habitat for the northern spotted owl was not determinable in June 1989 when the Service proposed to list the species, or when the Service issued its final rule one year later. Critical habitat received only brief discussion in both published rules. The Service offered the following explanation to justify its decision not to propose critical habitat in its June 1989 rule:

> The extensive range of the northern spotted owl, from British Columbia to San Francisco Bay, involves over 7 million acres of its preferred old-growth and mature forest habitat and an undetermined amount of other forest types that may also be of significance to the survival and recovery of the subspecies. Much of this habitat has been fragmented by logging, and many stands are isolated from each other or of such small size as not to support viable populations of spotted owls. The specific size, spatial configuration and juxtaposition of these essential habitats as well as vital connecting linkages between areas necessary for ensuring the conservation of the subspecies throughout its range have not been determined at this time, nor have analyses been conducted on the impacts of a designation.

54 Fed.Reg. at 26,675. The Service also solicited input on critical habitat from the public and concerned governmental agencies.

When the Service published its final listing rule one year later, the agency again deferred designation of critical habitat on grounds that it was not then "determinable." The explanation offered by the Service was virtually a verbatim repetition of its 1989 finding, quoted above. The only difference between the two rules, insofar as they address critical habitat, concerned the release in May 1990 of a federal report addressed to conservation strategies for the spotted owl.[5] The Service, which received a preliminary draft of the report immediately prior to the close of the comment period, stated that it was in the process of evaluating the report and would publish its final decision on critical habitat by June 23, 1991.[6]

■ This Court must limit its review of the reasonableness of the Service's actions to the time at which the decision was made. *Friends of Endangered Species*, 760 F.2d at 983; *City and County of San Francisco v. United States*, 615 F.2d 498, 502 (9th Cir.1980); *see also Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106, 111 (1973) (federal court must rule on "administrative record already in existence, not some new record made initially in the reviewing court"). The federal defendants fail to direct this Court to any portion of the administrative record which adequately explains or justifies the decision not to designate critical habitat for the northern spotted owl. Nowhere in the proposed or final rules did the Service state what efforts had been made to determine critical habitat. Nowhere did the Service specify what additional biological or economic in-

---

5. That report was the product of an inter-agency effort by the National Park Service, the Forest Service, and the Fish and Wildlife Service to devise conservation strategies for the spotted owl. *See A Conservation Strategy for the Northern Spotted Owl* (May 1990) ("Thomas Committee"). The parties agree that the report, and, more particularly, the spotted owl "habitat conservation areas" identified therein, are not the final word on critical habitat for the spotted owl. Notably, the scientific committee assumed

a 50 percent decline in owl population. Such species loss appears inconsistent with the species conservation and recovery mandates of the Endangered Species Act.

6. In addition, the Service indicated for the first time that it would consider whether designation of critical habitat is "prudent." No further explanation was provided in the final rule or to this Court. *See* 50 C.F.R. § 424.12(a).

formation was necessary to complete the designation. Nowhere did the Service explain why critical habitat was not determinable. *See 50 C.F.R. § 424.12(a) (requiring* Service to state "the reasons for not designating critical habitat").

Indeed, the Service candidly acknowledged in its June 1989 proposed rule that it had not conducted the analyses required by Section 4(b)(2). *See* 54 Fed.Reg. at 26,675. This Court interprets the Service's statement one year later that it *"will* evaluate the economic and other relevant impacts," absent any evidence of having done so, as tacitly reaffirming that the studies still had not been performed. *See* 55 Fed.Reg. at 26,192 (emphasis supplied).

More is required under the ESA and the Service's own regulations than the mere conclusion that more work needs to be done. *See* 50 C.F.R. § 424.12(a)(2).[7] It cannot be established upon the record presented that the Service "considered the relevant factors" or that it "articulated a rational connection between the facts found and the choice made." *Pyramid Lake Paiute Tribe,* 898 F.2d at 1414. Accordingly, this Court must find the Service abused its discretion when it declined to designate critical habitat for the northern spotted owl.

The Service's actions in June 1990 merit special mention. In its final rule the Service stated that the northern spotted owl is "overwhelmingly associated" with mature and old-growth forests. 55 Fed.Reg. 26,-175. The Service further stated that, at present rates of timber harvesting, much of the remaining spotted owl habitat will be gone within 20 to 30 years. 55 Fed.Reg. 26,182. Despite such dire assessments, the Service declined to designate critical habitat in its final rule, citing the same reasons

it gave one year earlier. Whatever the precise contours of the Service's obligations under the ESA, clearly the law does not approve such conduct.[8] Indeed, the Thomas Committee, which included Service personnel, warned that "delay in implementing a conservation strategy [for the spotted owl] cannot be justified on the basis of inadequate knowledge." *A Conservation Strategy for the Northern Spotted Owl,* at 1.

The federal defendants have attempted to supplement the administrative record by submitting two declarations from Marvin Plenert, regional director for the Fish and Wildlife Service. While this Court's review is properly limited to the administrative record, *see Camp,* 411 U.S. at 142, 93 S.Ct. at 1244, 36 L.Ed.2d at 111, the proffered materials further reinforce the conclusion that the Service's actions were unexcused under the ESA and governing regulations. Much of the information provided relates to the very substantial efforts by the Service to complete the listing of the northern spotted owl and to consult with affected federal agencies. In his only statement pertinent to the decision to defer designation of critical habitat, director Plenert explained:

> Because of the funding and workload required to complete the rulemaking process for the listing decision, the need to allocate many of [the Service's] knowledgeable biologists to conferences on Federal projects affecting the owl, and the fact that the Thomas Committee final report was not released until the month before the listing decision was due, the Service was not able at the time of listing to determine whether the areas outlined by the Thomas Committee (or other areas) met the ESA definition of "critical habitat".... These same funding, workload, and time constraints prevented the

---

7. The regulations of the Fish and Wildlife Service define two situations when critical habitat is not "determinable":
>   (i) Information sufficient to perform required analyses of the impacts of the designation is lacking, or
>   (ii) The biological needs of the species are not sufficiently well known to permit identification of an area as critical habitat.
> 50 C.F.R. § 424.12(a)(2).

8. Counsel for the federal defendants represented at oral argument that no information relevant to designation critical habitat was received during the comment period between the proposed and final listing rules. The Court finds counsel's statement to strain credibility; the Service's own records indicate 23,255 comments were received during the comment period. *See* Plenert (First) Decl., at 2.

Service from analyzing and considering the economic and other relevant impacts of designating particular areas as critical habitat as required by section 4(b)(2) of the ESA.

Plenert (First) Decl., at 4–5.

■ That the Thomas Committee was working to develop conservation strategies for the spotted owl did not relieve the Service of its obligation under the ESA to designate critical habitat to the maximum extent determinable.[9] Moreover, it was not until January of this year, when this Court invited additional briefing, that the Service first indicated it had hired "an economist" to perform the necessary economic analyses. *See* Plenert (Second) Decl., at 4. The most the agency could report seven months after the final listing rule was that "10 biologists [are] currently working on numerous spotted owl issues, including ... critical habitat." *Id.* at 5.

This Court is mindful of the prodigious resources dedicated by the Service to the spotted owl. The listing process required a truly remarkable effort by the Service given the volume of comments received and the complexity of the issues raised. The inter-agency consultations have consumed additional manpower and financial resources. Pursuant to Section 7 of the ESA, the Service must consult with other federal agencies whose programs may jeopardize an endangered or threatened species, or "result in the destruction or adverse modification of [the critical] habitat of such species...." 16 U.S.C. § 1536(a)(2).

In any event, such efforts, which the Court assumes have been on going since prior to June 1989, do not relieve the Service of its statutory obligation to designate critical habitat concurrently with the species listing, or to provide a rational and articulated basis for concluding that critical habitat is not determinable. *Cf. Natural Resources Defense Council, Inc. v. Train,* 510 F.2d 692, 712 (D.C.Cir.1975) (delay may be excused for impossibility); *Sierra Club v. Gorsuch,* 551 F.Supp. 785, 788–89 (N.D.

Cal.1982) (agency bears heavy burden of demonstrating impossibility). The simultaneous tasks assigned to the Service under the ESA are not insubstantial as the present case amply demonstrates. Nevertheless, designation of critical habitat is a central component of the legal scheme developed by Congress to prevent the permanent loss of species. Only under limited circumstances not demonstrated here may the Service properly defer its habitat designation responsibilities.

Upon the record presented, this Court finds the Service has failed to discharge its obligations under the Endangered Species Act and its own administrative regulations. Specifically, the Service acting on behalf of the Secretary of the Interior, abused its discretion when it determined not to designate critical habitat concurrently with the listing of the northern spotted owl, or to explain any basis for concluding that the critical habitat was not determinable. These actions were arbitrary and capricious, and contrary to law. 5 U.S.C. § 706.

Common sense dictates that the spotted owl would be poorly served by a hastily crafted or uninformed habitat plan. Congress expressly provided for periodic revisions to critical habitat plans to avoid this result. *See* 16 U.S.C. § 1533(a)(3)(B). Accordingly, the Service is ordered to submit to the Court by March 15, 1991 a written plan for completing its review of critical habitat for the northern spotted owl. The Service is further ordered to publish its proposed critical habitat plan no later than forty-five days thereafter. The final rule is to be published at the earliest possible time under the appropriate circumstances.

In summary, plaintiffs' motions to compel and for summary judgment are GRANTED. This action is hereby REMANDED to the Service for further proceedings consistent herewith. The Service is ORDERED to provide the Court by March 15, 1991 with a written plan for completing its review of critical habitat for the northern spotted owl. The Service is further ORDERED to publish its proposed

---

**9.** The Court notes parenthetically that the Thomas Committee was convened in October 1989, several months after the Service first declined to designate critical habitat.

critical habitat plan no later than forty-five (45) days thereafter. The final rule shall be published at the earliest possible time permitted under the appropriate regulations.

IT IS SO ORDERED.