CONSERVATION COUNCIL FOR,
HAWAI'I, et al., Plaintiffs,

v.

Bruce BABBITT, et al., Defendants.

No. CIV. 97–00098 ACK.

United States District Court,
D. Hawaii.

March 9, 1998.

Sherwood, Sierra Club Legal Defense Fund, Inc., San Francisco, CA, for plaintiffs.

Michael Chun, Office of the United States Attorney, Honolulu, HI, Kelly E. Mofield, Environmental and Natural, Resources Division, Wildlife and Marine Resources Section, Washington, DC, for defendants.

James K. Mee, Ashford & Wriston, Honolulu, HI, Anne M. Hawkins, Robin L. Rivett, Pacific Legal Foundation, Sacramento, CA, for Hawai'i Forest Industry Association, amicus.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

### BACKGROUND

Plaintiffs Conservation Council for Hawai'i, Sierra Club, and Hawaiian Botanical Society ("Plaintiffs") filed this action against Secretary of Interior Bruce Babbitt and the Director of the United States Fish and Wildlife Service Jamie Clark ("Defendants") seeking the Court's review of the United States Fish and Wildlife Service's final rules stating that no critical habitat will be designated for 245 plant species that are listed as endangered or threatened under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq.[1]

Since the enactment of the ESA, the Fish and Wildlife Service ("FWS") has listed approximately 700 plants nationwide as endangered or threatened. Of those 700 plants, the FWS has designated a critical habitat for twenty-four. 264 of the 700 plants listed nationwide, i.e., more than one-third, are located in Hawaii. Of the 264 plants listed in Hawaii, the FWS has designated a critical habitat for only three. Since 1990, the FWS has not designated a critical habitat for a single plant in Hawaii.

Plaintiffs filed a motion for summary judgment and memorandum in support thereof on

David L. Henkin, Sierra Club Legal Defense Fund, Inc., Honolulu, HI, Michael R.

---

1. 161 of the 245 plant species at issue were listed as endangered or threatened pursuant to a settlement involving Plaintiffs in *Conservation Council for Hawaii v. Lujan*, No, 98–00953–ACK (D.Haw. 1989). The decisions not to designate critical habitat for the 245 plant species at issue in this case were finalized in thirty-two (32) rules. Plaintiffs in this case provided specific comments on only three (3) of those final rules.

November 12, 1997 ("Pl.Mem."). On December 3, 1997, Defendants filed a motion for and memorandum in support of summary judgment and a memorandum in opposition to Plaintiffs' motion for summary judgment ("Def.Mem."). On December 29, 1997, Plaintiffs filed a memorandum in opposition to Defendants' motion for summary judgment and a reply memorandum in support of their motion for summary judgment ("Pl.Op."). On January 21, 1998, Defendants filed a reply memorandum in support of their motion for summary judgment ("Def.Reply"). On January 26, 1998, Plaintiffs filed a sur-reply ("Pl.Sur–Reply"). On February 2, 1998, the Hawai'i Forest Industry Association ("HFIA") by leave of the Court filed a brief amicus curiae. Plaintiffs filed a response to HFIA's brief on February 5, 1998. The Court heard oral arguments on February 20, 1998.

In brief, the FWS based its nondesignation decisions on three reasons. First, for all but one of the 245 plant species, the designation of a critical habitat would increase the likelihood of illegal taking or vandalism. Second, for plant species located on private property, designation of a critical habitat would provide little or no benefit because the designation of a critical habitat affects solely federal governmental activity. Third, for plant species located on federal government property, the designation of a critical habitat provides little or no additional benefit beyond the existing precautions the federal government must take because the plant species are listed as endangered or threatened.

### STANDARD OF REVIEW

Under the Administrative Procedures Act ("APA"), a district court may review an agency's decision to determine whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Resources Ltd., Inc. v. Robertson,* 35 F.3d 1300, 1304 (9th Cir.1993) (quoting § 706 of the APA, 5 U.S.C. § 706(2)(A)). "In making this inquiry, [the court] ask[s] whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Natural Resources Defense Council v. United States Dept. of Interior,* 113 F.3d 1121, 1124 (9th Cir.1997) ("*NRDC*")

(quoting *Resources Ltd.,* 35 F.3d at 1304). The Court's review is typically limited to the administrative record in existence at the time the agency made its decision. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).

The Court "accord[s] a high degree of deference to an agency's interpretation of the statutory provisions and regulations it is charged with administering." *NRDC,* 113 F.3d at 1124 (citation omitted). Nonetheless, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Summary judgement shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c). Where, as here, the Court's review is limited to the administrative record, there are no genuine issues of material fact, and summary judgment is proper.

### DISCUSSION

#### A. Statutory Framework

The ESA provides that, "to the maximum extent prudent and determinable," the Secretary of Interior or Commerce ("the Secretary") shall designate a critical habitat concurrently with the determination that a species is endangered or threatened. 16 U.S.C. § 1533(a)(3). Designation of a critical habitat may be postponed for one year, however, if a critical habitat of such species is not yet determinable at the time the species is listed as endangered or threatened. 16 U.S.C. § 1533(b)(6)(C).

> A critical habitat is defined as
>
> (i) the specific areas within the geographical area occupied by the species ... on which are found those physical and biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and
>
> (ii) specific areas outside the geographical area occupied by the species ... upon a

determination of the Secretary that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A).

FWS regulations provide that the designation of a critical habitat is not prudent in either of two situations:

(i) The species is threatened by taking or other human activity, and identification of critical habitat can be expected to increase the degree of such threat to the species, or

(ii) Such designation of critical habitat would not be beneficial to the species.

50 C.F.R. § 424.12(a)(1). In addition, the Secretary shall consider the best scientific data available and the economic impact of designation. 16 U.S.C. § 1533(b)(2). The Secretary may exclude any area from a critical habitat if the benefits of such exclusion outweigh the benefits of designating that area, unless such exclusion will result in extinction of the species. *Id.*

One effect of the designation of a critical habitat is the consultation requirement in Section 7 of the ESA, which provides:

Each federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency ... is not likely to jeopardize the continued existence of any endangered species or threatened species or *result in the destruction or adverse modification of habitat of such species which is ... critical ....*

16 U.S.C. § 1536(a)(2) (emphasis added).

A proposed rule designating a critical habitat, like the determination that a species is endangered or threatened, is published in the federal register and "a newspaper of general circulation in each area of the United States in which the species is believed to occur." 16 U.S.C. § 1533(b)(5). In addition, the FWS gives actual notice of a regulation proposing a habitat designation to the state agency and county in which the species is believed to occur. *Id.* A final rule designating a critical habitat is also published in the Federal Register. 16 U.S.C. § 1533(b)(6).

**B. Critical Habitat Designation**

With respect to the rules that Plaintiffs challenge, the FWS found that designation of a critical habitat for 245 species of plants in Hawaii would not be prudent. For each of these species, the FWS based its decision on one or more of the following three reasons. First, designation would increase the likelihood of illegal taking and vandalism. Second, little benefit would result from designation because the plant species is located on private land. And, third, little benefit would result from designation because the plant species is on federal land and designation of a critical habitat would not increase the precautions that the government must already take. For the reasons that are discussed below, the Court finds that the FWS failed to establish a rational basis for each of these reasons.

**1. "Increased Threat Rationale"**

 With respect to all but one of the 245 species of plants at issue,[2] the FWS declined to designate a critical habitat at least in part because the FWS concluded that designation of a critical habitat would increase the likelihood that individuals would illegally take or vandalize the plants. The court in *NRDC* called this "the increased threat rationale." 113 F.3d at 1125. In most cases, the FWS had no evidence of prior taking or vandalism. On the contrary, the FWS based its conclusion on the fact that there were very few plants in the species' population and that, in many cases, even a single act of taking or vandalism could cause the extinction of the plant species. Furthermore, the FWS noted that plants, unlike animals, cannot take measures to avoid human contact.

The FWS' rationale can be applied to all but the few plant species that are both endangered or threatened and also have a sufficient number that taking or vandalism would not significantly affect the existence of the species. The ESA, on the other hand, requires the designation of critical habitats in all but rare cases. Congress anticipated the threat of taking to some endangered or threatened plants, but it declared that designation is the general rule:

located on private land where federal involvement is unlikely. Def. Mem. at 8 n. 9.

---

**2.** For *Pritchardia aylmer-robinsonii*, the FWS found that designation would not be beneficial solely because all specimens of the species are

As an example [of where designation may not be in the best interest of the species], the designation of critical habitat for some endangered plants may only encourage individuals to collect these plants to the species' ultimate detriment. The committee intends that in most situations the Secretary will, in fact, designate critical habitat at the same time that a species is listed as either endangered or threatened. It is only in rare circumstances where the specification of critical habitat concurrently with the listing would not be beneficial to the species.

H.R.Rep. No. 95–1625 at 17 (1978), reprinted in 1978 U.S.C.C.A.N. 9453, 9467.

 The ESA thereby establishes a general rule that designation should be made unless there is evidence that such a designation is not beneficial. In determining that designation would not be beneficial to the species, the FWS, therefore, must consider evidence specific to each species regarding the increased likelihood of taking caused by the designation of a critical habitat. *Cf. NRDC,* 113 F.3d at 1125 (finding improper the FWS' reliance on the increased threat rationale because the FWS did not explain how evidence of habitat destruction in the past shows that designation would lead to more habitat destruction in the future).[3] In fact, the FWS' regulations provide that designation is imprudent based on the risks of taking only if two conditions are met: first, that the species is threatened, and, second, that designation would increase that threat. 50 C.F.R. § 424.12(a)(1)(i). The FWS, however, has merely determined that designation would increase the threat of taking any endangered or threatened plan without determining that the particular species has been threatened.[4]

The rules at issue here contradict the FWS' own interpretation of the *NRDC* decision. Attached to its Reply Memorandum, the FWS provided a memorandum interpreting the *NRDC* decision sent by the Office of the Solicitor of the Department of the Interior to the Director of the FWS ("Solicitor's Memo"). During oral argument, the FWS stated that the Solicitor's Memo sets standards that the FWS should follow.

The Solicitor's Memo states that a finding of imprudence "must include all relevant facts and a detailed analysis specific to the species." Def. Reply Exh. D at 2. The memorandum continues, "These examples may include documented instances of direct or indirect harm to the species as a result of vandalism, habitat destruction, collection, etc. or where such evidence does not exist, documented instances of such harm to a similar species or within the same geographic area." *Id.* The memorandum concludes this section by noting, "The Service should explain how designating critical habitat will lead to increased threats beyond the levels caused by listing itself. . . ." *Id.* at 2–3. In all but a few cases, the FWS fails to discuss any specific evidence of taking. In addition, the FWS provides no evidence that the plants in Hawaii for which a critical habitat has been designated have experienced any increase in taking since designation.[5]

---

3. The FWS argues that *NRDC* is distinguishable because that case involved critical habitat designation for an animal species, and this case involves plant species. Specifically, the FWS notes that plants have smaller habitats than animals and cannot take measures to avoid human contact. Congress, however, did not distinguish between plant and animal species in the requirements for designating a critical habitat. Congress made such a distinction elsewhere in the ESA. *Compare* 16 U.S.C. § 1538(a)(1) (prohibiting certain acts with respect to endangered species of fish and wildlife) *with* 16 U.S.C. § 1538(a)(2) (prohibiting other acts with respect to endangered species of plants). Given that Congress has declined to do so, the Court will not create such a distinction in the requirements for designating a critical habitat.

4. The FWS argues that it considered evidence specific to each species in assessing the risk of designation by noting the number of plants in the species and the unique aspects of Hawaii's environment. It did not, however, consider any evidence specific to each species regarding the likelihood that designation would increase the risk of taking or vandalism. For instance, except in a few cases, it did not consider past incidents of taking or even the general level of interest in the species. While it is true, as the FWS argues, that in every case designation provides information to the public regarding the location of the plants, the FWS did not appear to consider, in each case, the degree to which information about the location of the plants already exists and is readily available. Thus, the FWS did not consider the risks of designation in each case.

5. In fact, at oral argument, Plaintiffs' counsel

In addition, the FWS' rationale fails to balance the risks of designation against the benefits. The ESA provides that land may be excluded from critical habitat if "the benefits of such exclusion outweighs the benefits of specifying such areas as part of the critical habitat, unless... the failure to designate such area as critical habitat will result in the extinction of the species concerned." 16 U.S.C. § 1533(b)(2); *see also* Solicitor's Memo at 3 ("Increased threats to species and any benefits to the species that would likely result from a critical habitat designation must be analyzed and weighed against each other."). In *NRDC*, the Ninth Circuit found the FWS' failure to designate a critical habitat for the gnatcatcher improper. 113 F.3d at 1125–26. In that case, the FWS relied, in part, on the rationale that designation would increase the threat of prohibited takings. *Id.* at 1125. The FWS cited eleven cases of habitat destruction to support its conclusion. *Id.* The *NRDC* court concluded, however, that "[t]he listing did not explain how such evidence shows that designation would cause more landowners to destroy, rather than protect, gnatcatcher sites." *Id.*

█ In this case, like in *NRDC*, the FWS has stated that designation of a critical habitat would increase the likelihood of taking, but the FWS failed to compare this risk to the benefits of such designation.[6] For example, threats to many plants include inadvertent acts such as fire and human-caused erosion, *see* Def. Mem. Table 1, but the FWS does not consider whether education of the public and state and local government may reduce these threats. Although many species may be destroyed by a single act of interference, the FWS must consider whether designation may prevent an inadvertent act of destruction as well as whether it may encourage a deliberate act of destruction.

By not considering the benefits of designation, the FWS, like in *NRDC*, has failed to consider all relevant factors; the FWS' reliance on the "increased threat" rationale was therefore improper.

### 2. Benefits of Designation on Private Land

█ In a number of situations in which plants were located on private lands, the FWS declined to designate critical habitats because the protections resulting from a designation apply only to federal activity. The FWS thereby concluded that designation would result in little benefit. *See, e.g.,* 61 Fed.Reg. 53128 (declining to designate a critical habitat for Delissea undulata because, in part, "the limited protections added by designating critical habitat are provided by Section 7 [of the ESA], which applies only to actions by Federal agencies[, and] [t]here are no known Federal activities within the currently known habitat of this species.").

The FWS relied upon a similar rationale in *NRDC*. There, the FWS declined to designate a critical habitat for the gnatcatcher in part because most populations of gnatcatchers are found on private lands. 113 F.3d at 1125. The court observed that the FWS' rationale meant that a habitat designation would not occur unless Section 7 would apply to "the majority of land use activities within critical habitat." *Id.* at 1125–26. The *NRDC* court concluded that this rule "contravenes the clear congressional intent that the imprudence exception be a rare exception." *Id.* at 1226.

Like in *NRDC*, the FWS' rationale contravenes congressional intent. Congress did not exclude private lands from the designation of critical habitats, even though the Section 7's consultation requirements apply only to federal activity.[7] In fact, there are at least two benefits to designation of critical

noted that one of the three species for which a critical habitat was designated many years ago is located on a small island in Oahu that is easily accessible to the public, but the FWS has provided no evidence that there has been any occurrence of taking since the designation of that critical habitat.

**6.** The Administrative Record includes "listing action forms" prepared by the FWS' Honolulu Field Office for 65 of the plant species at issue. For 52 of these 65 plant species, the Honolulu Field Office concluded that critical habitat was

not yet determinable but "[c]ritical habitat will not increase the threats to this species, and will most likely benefit the species." Henkin Decl. Exh 14. The FWS ultimately converted the Field Office's "not yet determinable" conclusions to "not prudent" conclusions but failed to address the Field Office's evidence indicating that designation might be beneficial to these species.

**7.** Although the HFIA argues in its amicus curiae brief that Congress did not intend the FWS to designate critical habitat on private land, their argument belies this conclusion. The

habitats on private property. First, even if no federal activity currently occurs on the land, there may be such activity in the future, and there is no assurance that the FWS would designate a critical habitat at that time or that such a designation would be timely.

Second, the designation itself informs the public as well as the state and local governments. *See* 16 U.S.C. § 1533(b)(5) (requiring that a proposed rule of designation be published in a local newspaper and be disclosed to state and local government); 16 U.S.C. § 1533(b)(6) (requiring publication in the Federal Register of a final rule designating a critical habitat). Although the determination that a species is endangered or threatened is also publicized, the designation of the critical habitat provides greater information to the public and state and local government by informing not only that the species is endangered or threatened but also what area is essential to the conservation of the species.[8]

For the foregoing reasons, the Court finds that the FWS' reliance on the fact that the species are located on private lands fails to establish "a rational connection between the facts found and the choice made." *NRDC*, 113 F.3d at 1126 (citation omitted).

### 3. Benefits of Designation on Federal Land

■ The final rationale on which the FWS relies is that, for plant species located on federal lands, the designation of a critical habitat would not provide additional benefits beyond those provided by listing of species as endangered or threatened. The FWS rea-

sons that the listing of species as endangered or threatened invokes the consultation requirements under Section 7 of the ESA, and that the considerations for consultation do not change by the designation of a critical habitat for plant species that include few individual plants.

This rationale fails to establish a rational basis for nondesignation of a critical habitat for two reasons. First, the FWS fails to consider the specific effect of the consultation requirements on each species. Second, the FWS incorrectly assumes that designation of a critical habitat has no benefit outside of the consultation requirements.

#### i. Consultation Requirements

■ The FWS states that designation of a critical habitat would not benefit any of the plant species at issue because it would not alter the consultation process under Section 7 of the ESA. *See, e.g.,* 61 Fed.Reg. 53106 (explaining why the designation of a critical habitat for twenty-five plant species in Hawaii would not be prudent). Specifically, the FWS notes that, once a species is listed as endangered or threatened, federal agencies must consult with the Secretary to consider whether federal activity would "jeopardize the continued existence" of the species. 16 U.S.C. § 1536(2). After a critical habitat is designated, the consultation requirement also includes consideration of whether the federal activity would "result in the destruction or adverse modification" of the critical habitat. *Id.* The FWS concludes that, in light of its regulations interpreting Section 7,[9] the con-

---

HFIA notes that elsewhere in the ESA, Congress treated private landowners differently from other individuals. *See* HFIA Mem. at 10. Thus, Congress specified when it intended to create a distinction based on private ownership of land, but Congress declined to make such a distinction with respect to the designation of a critical habitat. *Cf. NRDC*, 113 F.3d at 1126 (rejecting the FWS' argument that a critical habitat should not be designated where the majority of the habitat would lie on private land).

8. Plaintiffs noted that the mere listing of a species as endangered or threatened provides information to the public regarding the location of the species. Although a designation of critical habitat may not provide more specific information regarding the location of a species, it may provide more information regarding the importance of certain elements of the species' environment;

a critical habitat is designated only on land that is essential to the species' conservation. *See* 16 U.S.C. § 1532(5)(A).

9. The FWS defines *"Jeopardize the continued existence of"* to mean "to engage in an action that reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. The FWS defines *"Destruction or adverse modification"* to mean "a direct or indirect alteration that appreciably diminishes the value of critical habitat for both the survival and recovery of a listed species. Such alterations include, but are not limited to, alterations adversely modifying any of those physical or biological features that were the basis for determining the habitat to be critical." *Id.*

siderations under the jeopardize prong would be no different than the considerations under the critical habitat prong for any of the plant species at issue. Thus, the FWS concludes that the designation of a critical habitat would not increase the considerations under the consultation requirements.

The FWS approach, however, contradicts its own interpretation of the ESA in light of *NRDC.* The Solicitor's Memo states:

> In analyzing the benefits to the species, the Service may consider the question of the overlap of the jeopardy and adverse modification standards, but must do so as applied to the species and habitat at issue. The Service must explain in reasonable detail the degree to which the standards overlap with respect to that species and the habitat it needs for its continued survival. For instance, with respect to a species for which habitat degradation is the primary cause of its endangerment, it may be easy for the Service to show how a finding of adverse modification of habitat that would be designated as critical would be equivalent to a finding of jeopardy. However, the analysis must also discuss any countervailing factors, such as whether designation of critical habitat may provide some benefits to a species.

Solicitor's Memo at 3. The FWS, however, has failed to provide a specific analysis of the consultation requirements for each species at issue. By its own admission, it may not state generally that the designation of critical habitat for plant species would have no effect on the consultation requirements.

Plaintiffs argue that the FWS' reasoning is flawed for two additional reasons: First, the *NRDC* Court stated that the existence of other protection should not serve as a basis for nondesignation, and, second, the FWS may not rely on its regulations interpreting the jeopardize and adverse modification standards because they contradict the ESA.

In *NRDC,* the FWS argued that designation of a critical habitat was not beneficial because a state-run program provided a "far superior" means of protection. 113 F.3d at 1126. The *NRDC* court found that this was not a proper basis on which to justify nondesignation. *Id.* at 1127. The court explained, "Neither the [ESA] nor the implementing regulations sanctions nondesignation of habitat when designation would be merely less beneficial to the species than another type of protection." *Id.* In this case, however, the FWS is considering the same type of protection based on the same law. The FWS is not considering whether consultation is better than another means of protection but rather whether the designation of a critical habitat alters the consultation requirements.[10] Thus, *NRDC* does not preclude consideration of the protection offered by the consultation requirements for listed species. Given that the FWS must consider the benefits of designation, it is reasonable for the FWS to consider the extent to which designation enhances the consultation requirement.

Plaintiffs also argue that the FWS may not rely upon its regulations interpreting the jeopardize and adverse modification standards because those regulations contradict the ESA. Specifically, they argue that the regulations equate the jeopardize and adverse modification standards, thereby rendering the adverse modification standard superfluous. Plaintiffs argue that, contrary to the FWS' regulations, the jeopardize prong of the consultation requirement involves considering only the effect of federal activity on the *existence* of the plants while the critical habitat prong involves consideration of the species' *recovery.*

The Court agrees with Plaintiffs that the ESA clearly established two separate considerations, jeopardy and adverse modification, but recognizes (as Plaintiffs acknowledged in oral argument) that these standards overlap to some degree. The Solicitor's Memo similarly recognizes that these standards are different and requires the FWS to address this difference for each species individually. Given that Plaintiffs have not challenged the FWS' regulations facially but only the FWS' reliance on these regulations to justify non-

10. HFIA, on the other hand, notes that in 1988, Congress provided additional protection to plants by making illegal the taking or destroying of endangered or threatened plants. HFIA Mem. at 8–10 (citing 16 U.S.C. § 1538(a)(2)(B)). This type of protection differs from that of consultation and, like the state protection discussed in *NRDC,* this protection may not serve as a basis for a decision not to designate a critical habitat.

designation of critical habitat, the Court will not at this stage determine whether these regulations are in fact valid. Instead, the Court directs the FWS to follow the Solicitor's instructions on remand and, when explaining a decision not to designate a critical habitat, the FWS must specify how the consultation requirements would be affected by a designation of critical habitat.

### ii. Benefits of Designation Other Than Consultation

■ The FWS also fails to recognize that there are significant substantive and procedural protections that result from the designation of a critical habitat outside of the consultation requirements of Section 7.

Substantively, designation establishes a uniform protection plan prior to consultation. In the absence of such designation, the determination of the importance of a species' environment will be made piecemeal, as individual federal projects arise and agencies consult with the FWS. This may create an inconsistent or short-sighted recovery plan. In addition, Congress has recognized that "consultations expected under Section 7 may ultimately overwhelm" the FWS. H.R. Rep. 95–1625 at 12, reprinted in 1978 U.S.C.C.A.N. 9453, 9462. Thus, the designation ensures that the proper attention and focus is provided in determining a recovery plan. *Cf. Northern Spotted Owl v. Lujan,* 758 F.Supp. 621, 629 (W.D.Wash.1991) ("Common sense dictates that the spotted owl would be poorly served by a hastily crafted or uninformed habitat plan."). Furthermore, in a case cited by Defendants, the government noted that designation of critical habitat "plays a critical role in identifying those areas in which a § 7 consultation will be triggered." *American Rivers v. National*

*Marine Fisheries Serv.,* Civ. No. 96–384–MA, slip op. at 7 (D.Or. Oct. 17, 1997) (Def.'s Reply Exh. B).[11] Accordingly, establishing a uniform plan prior to consultation provides substantial, additional protection for a species beyond the consultation requirement.

Procedurally, the designation of a critical habitat educates the public as well as state and local governments, and affords them the opportunity to participate in the designation. The ESA requires the publication in the federal register and in a local newspaper of a proposed rule designating a critical habitat.[12] 16 U.S.C. § 1533(b)(5). Furthermore, the FWS must provide actual notice of such a proposed regulation to state and local governments. *Id.* The ESA also states that the Secretary may provide notice of such a regulation "to such professional scientific organizations as he deems appropriate." *Id.* Thus, Congress envisioned a process in which the public is informed and participates in the designation of a critical habitat; these procedures do not occur when a federal agency consults the FWS under Section 7.

### CONCLUSION

The FWS failed to articulate a rational basis for invoking the imprudence exception and not designating critical habitats for the 245 plant species at issue. The Court therefore finds that the FWS' actions were "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."[13] The Court expresses no opinion as to whether or not a critical habitat should be designated for any of the subject species. The Court GRANTS Plaintiffs' motion for summary judgment, DENIES Defendants' motion for summary judgment, and REMANDS this case to the FWS so that it may consider

11. The FWS may respond that, when there are few individuals in a plant species, the area in which consultation is triggered is already known merely by identifying the species as endangered or threatened. Yet, the FWS argues that designation provides more precise information regarding the location of the species. Thus, designation may better inform other federal agencies regarding areas in which consultation is required.

12. Although the FWS publishes its proposal of nondesignation, this proposal is clearly less informative than the publication of a proposed

designation of a critical habitat. As noted above, *see* note 8, *supra,* the designation of a critical habitat may provide more information to the public than merely listing a species as endangered or threatened.

13. Although Plaintiffs argue that the FWS established an illegal, blanket policy of nondesignation of critical habitat, the Court need not determine whether the nondesignation in this case was part of a general policy; the Court's discussion makes clear that the decision to designate or not designate critical habitat must be made in light of the circumstances particular to each species.

the designation of critical habitat consistent with this opinion.

The FWS requested and Plaintiffs agreed that, in the event that the Court remands this case, the Court permit the parties to submit briefs regarding a timetable for the FWS' reconsideration on remand. In response to this request, the Court ORDERS the FWS to submit a brief on this issue no later than thirty (30) days after this Order is filed. Plaintiffs may submit a response no later than fourteen (14) days after service of FWS' brief. FWS may submit a reply no later than seven (7) days after service of Plaintiffs' brief.

IT IS SO ORDERED.